# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| In re: | Chapter 11 |
| MERITAGE COMPANIES, LLC, an Alaskan limited liability company, | Arizona Case No. 2:20-bk-07718-MCW |
| Debtor. | |
| JACK BARRETT and MERITAGE COMPANIES, LLC, an Alaskan limited liability company, | Alaska Adv. Proc. No. 20-90011-GS |
| Plaintiffs, | |
| v. | |
| ROBERT "BOB" GROSS and AK MERITAGE COMPANIES, LLC, an Alaskan limited liability company, | |
| Defendants. | |

## ORDER ON DEFENDANTS' MOTION TO REMAND AND PLAINTIFFS' MOTION FOR TRANSFER OF VENUE

On December 15, 2020, the court conducted a hearing on the following matters:

1) Defendants' Notice of Motion and Motion to Remand the Adversary Proceeding in Whole or in Part Under [28] U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027(d) (Adv. ECF No. 7) (Motion to Remand), filed by defendants Robert "Bob" Gross and AK Meritage, LLC; and

2) Motion to Transfer Venue (Adv. ECF No. 4) (Transfer Motion), filed by plaintiff and debtor Meritage Companies, LLC.

Appearances were as noted on the record. For the following reasons, the court exercises its discretion under 28 U.S.C. § 1452(b) to remand all proceedings removed to this court. As a result, the Transfer Motion shall be denied.

## FACTS

The nucleus of this dispute is the business partnership between Jack Barrett and Bob Gross, which dates back to 2010.[1] One of their joint ventures involved the acquisition and development of real property in North Ogden, Utah (the North Ogden Project). Barrett owned 75% of the project while the remaining 25% was owned by Meritage Companies, LLC. Barrett and Gross co-owned Meritage Companies equally. As result, Gross held a 12.5% interest in the North Ogden Project.

Barrett dealt primarily with the North Ogden Project. Gross maintains that Barrett allowed Meritage Companies to be administratively dissolved, only to form a new limited liability company with the same name but excluding Gross from ownership. To avoid confusion, the parties refer to this entity as New Meritage. Upon discovering that the original Meritage Companies had been dissolved and that Barrett had formed a new entity that excluded him, Gross reinstated the original Meritage Companies, LLC, but was forced to rename it as AK Meritage Companies, LLC (AK Meritage).

On July 15, 2015, New Meritage and Barrett sued Gross and AK Meritage in Case No. 3AN-15-08320 CI, filed in the Superior Court for the Third Judicial District in

---

[1] Adv. ECF No. 7-1, Gross Decl., p. 2:18-19.

Anchorage, Alaska (the State Court Action). New Meritage and Barrett asserted numerous tort claims against Gross and AK Meritage.[2]  Gross and AK Meritage filed counterclaims for breach of contract and torts. Gross also recorded a lis pendens against certain real property included in the North Ogden Project in Utah.  The Superior Court dismissed all claims against Gross.[3]

On January 10, 2019, the parties entered into a stipulation in the State Court Action under which Gross would release the lis pendens on certain parcels of the North Ogden Project.  In exchange Barrett and New Meritage agreed to deposit 37.5% "of all net proceeds from [the sales of North Ogden Project parcels] into  escrow."[4]  The Superior Court entered an order approving the stipulation the next day.[5]

Gross released the lis pendens, but the parties have since been embroiled in a series of disputes regarding the construction and enforcement of the stipulation.  The defendants filed their Motion to Enforce Stipulation and Order re Escrow to require Barrett and New Meritage to deposit $875,969.63 into escrow representing the amounts they asserted were due from prior sales, together with 37.5% of all net proceeds from future sales.  Barrett and New Meritage opposed the motion on the basis that the stipulation only required the escrow from future sales.  On March 26, 2019, the Superior

---

[2] For convenience, Gross and AK Meritage are sometimes referred to as the defendants.

[3] Adv. ECF No. 7-1, Gross Decl., p. 4, ¶ 11.

[4] Adv. ECF No. 7-1, Ex. 4 at p. 68, ¶ 3.  Citations to page numbers in the Exhibits to the Motion to Remand reflect the Bates numbering assigned by the defendants and not the court's ECF page numbering.

[5] Adv. ECF No. 7-1, Ex. 4.

3

Court entered its order granting the defendants' motion and required Barrett and New Meritage to verify the amount or deposit the $875,969.63 within ten days.[6]  The court also precluded the withdrawal of any money from escrow absent further court order.[7]

Barrett and New Meritage moved the court to modify or clarify its March 26, 2019 order.  As recited by the court, Barrett and New Meritage sought to reduce the amount of the escrow and to be permitted to substitute an arbitration award for the cash deposit previously required.[8]  The court denied the motion in an order dated August 19, 2019, and found that neither Barrett, nor New Meritage, had complied with the outstanding order or provided evidence to support deviation from that order.[9]  The court further noted that Barrett and New Meritage had a history of bringing motions to clarify that warranted sanctions.[10]  Rather than impose monetary sanctions, the court continued to require Barrett and New Meritage to place $875,969.63 into escrow and precluded any payment of "development fees" to themselves or related parties until the escrow was fully funded by a cash deposit or bond.[11]  The court did give Barrett and New Meritage the opportunity to provide a "detailed" affidavit to substantiate that they lacked the funds to make the

---

[6] Adv. ECF No. 7-1, Ex. 5 at p. 78.  The court signed the order on March 25, 2019, but it was not entered until the next day.

[7] *Id*.

[8] Adv. ECF No. 7-1, Ex. 6 at p. 86.

[9] *Id*. at pp. 86-87.

[10] *Id*. at pp. 88-89.

[11] *Id*. at pp. 89-90.

deposit.[12]  It also required them to pay the defendants $2,500 in attorney fees as a sanction.[13]

Undeterred by the court's comments in its August 19, 2019 order denying their request for clarification, Barrett and New Meritage moved for reconsideration.  On September 24, 2019, the court denied reconsideration, but revised the amount of cash or bond to be deposited into escrow to $326,199.27.[14] The court acknowledged that Barrett or New Meritage had deposited $26,000 into escrow with the court.  It then proceeded to observe:

> Earlier in this case, Judge Spaan contemplated "litigation-ending sanctions" if Plaintiffs did not begin to diligently comply with the court's orders.  While Judge Spaan did not find at that time that such sanctions were necessary, he cautioned Plaintiffs against continued discovery violations.  The court finds Judge Spaan's reasoning instructive in the present context, where Plaintiffs are once again engaging in multiple rounds of motion practice on a collateral matter and are not "diligently complying with the court's order." Litigation-ending sanctions would appear to be an appropriate measure where Plaintiffs are refusing to comply with the January 11 order to which they stipulated despite orders on March 25 and August 19 upholding and clarifying the stipulation.  Plaintiffs' conduct is particularly noteworthy because they have already obtained the benefit of their bargain - Defendants released the lis pendens encumbering the North Ogden properties eight months ago.[15]

---

[12] *Id*. at p. 90.

[13] *Id*.

[14] Adv. ECF No. 7-1, Ex. 7 at p. 99.

[15]  *Id*. at pp. 98-99.

5

In making the above statement, the court specifically referenced representations during the August 9, 2019 hearing on reconsideration that Barrett and New Meritage were able to post a bond for roughly $300,000.[16]  Ultimately, the court required them to deposit $326,199.27 in cash or bond with the court, but once again gave them the opportunity to provide a detailed affidavit from Barrett to substantiate the lack of funds and bonding ability.[17]

The parties proceeded to trial in late 2019.  On December 13, 2019, the jury returned its verdict finding that Barrett and Gross had entered into a contract that provided the original Meritage Companies would own 25% of the North Ogden Project. The net effect of the original Meritage Companies' ownership interest resulted in "giving Gross a 12.5% interest" in the North Ogden Project.[18]  The jury further specifically found that Barrett had breached his fiduciary duties to Gross, and had defrauded Gross.[19] Finally, the jury awarded punitive damages, though it was instructed that it did not need to determine an amount for punitive damages.[20]  In early 2020, the Superior Court heard,

---

[16] *Id*. at p. 97.

[17] *Id*. at pp. 99-100.

[18] Adv. ECF No. 7-1, Ex. 1 (Jury Verdict) at p. 3.

[19] *Id*. at p. 4.

[20] *Id.*

and denied, post-trial motions to set aside the verdict and for a new trial.[21]  A separate

trial on damages was scheduled for August 3-5, 2020.[22]

In January 2020, Gross sought an order confirming Barrett's and New Meritage's

continuing obligation to comply with the court's prior orders and deposit cash or bond for

the net proceeds from sales of the North Ogden Project.  The court entered an order

granting the relief over Barrett's and New Meritage's objections.[23]  The court further

ordered that until the full escrow was funded, 100% of any future sales would be

deposited into the court registry.[24]

Finally, on June 18, 2020, the Superior Court addressed several motions

concerning the effect of the jury's verdict.  The court rejected Barrett's and New

Meritage's argument that the verdict was vague as it did not define the North Ogden

Project.[25]  It similarly denied a motion to limit the remedies sought by Gross.[26]

Specifically, the court noted that it had previously ruled that "Defendants were awarded a

12.5% interest in the North Ogden, Utah real estate development project, rather than in

---

[21] Adv. ECF No. 7-1, Ex. 3.

[22] *Id.* at p. 58.

[23] Adv. ECF No. 7-1, Ex. 8.

[24] *Id*. at p. 107.

[25] Adv. ECF No. 7-1, Ex. 10 at pp. 121-124.

[26] *Id*. at pp. 124-126.

Meritage Companies, LLC."[27]   The court then granted the motion to compel Barrett and New Meritage to provide discovery.[28]   In doing so, the court detailed at length the history of discovery disputes in the case, and found that Barrett's and New Meritage's responses to the discovery request at issue provided "incomplete and evasive responses and assert objections that are not substantially justified."[29]   The court also granted Gross's request to establish a constructive trust based on its detailed history of Barrett's and New Meritage's failure to comply with the court's prior escrow orders, and what it characterized as equivocation and deception from Barrett and New Meritage, as well as their attorneys.[30] Finally, court required that Barrett and New Meritage fund the escrow account by June 30, 2020, or alternatively appear on July 1, 2020, "and show cause as to why they should not be precluded from presenting expert witness testimony at the bench trial on damages."[31]

On June 30, 2020, Barrett and New Meritage filed chapter 11 petitions in the United States Bankruptcy Court for the District of Arizona.

---

[27] *Id*. at p. 125.

[28] *Id*. at pp. 126-136.

[29] *Id*. at p. 133.

[30] *Id*. at pp. 141-147, 149-150.

[31] *Id*. at p. 153.

## ANALYSIS

New Meritage removed the State Court Action under 28 U.S.C. § 1452(a), which provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.[32]

Removal is effectuated by filing the appropriate notice with the court from which the case is to be removed, and is automatic upon filing.[33]

Even if properly removed, this court has broad discretion to remand the matters under § 1452(b).[34]  Under 28 U.S.C. § 1452(b) courts may remand removed matters on "any equitable ground."[35]  While the phrase "equitable ground" is not defined in the statute, courts have considered a multitude of factors to determine whether remand is appropriate:

1.  the effect or lack thereof on the efficient administration of the estate if the Court recommends remand or abstention;

---

[32] 28 U.S.C. § 1452(a).

[33] Fed. R. Bankr. P. 9027(a)(1); *Roberts v. Bisno (In re Bisno)*, 433 B.R. 753, 756 (Bankr. C.D. Cal. 2010).  Rule 9027(a)(2) requires that removal be timely sought under its provisions.  Gross does not challenge the timeliness of removal.

[34] *See Citigroup, Inc. v. Pacific Investment Management Co., LLC (In re Enron Corp.)*, 296 B.R. 505, 508 (C.D. Cal. 2003).

[35] 28 U.S.C. § 1452(b).

2.      the extent to which state law issues predominate over bankruptcy issues;

3.      the difficult or unsettled nature of applicable law;

4.      the presence of related proceedings commenced in state court or other non-bankruptcy proceedings;

5.      the jurisdictional basis, if any, other than § 1334;

6.      the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7.      the substance rather than the form of an asserted core proceeding;

8.      the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9.      the burden on the bankruptcy court's docket;

10.     the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11.     the existence of a right to a jury trial;

12.     the presence in the proceeding of nondebtor parties;

13.     comity; and

14.     the possibility of prejudice to other parties in the action.[36]

The facts and circumstances of each case determine which, and how many, factors should be considered in the court's exercise of discretion under § 1452(b). That being

---

[36] *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 761 (Bankr. S.D. Cal. 2007) (quoting *Enron*, 296 B.R. at 508, n.2); *see also Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990) (quoting *Republic Reader's Serv., Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)); *Nilsen v. Nielson (In re Cedar Funding, Inc.)*, 419 B.R. 807, 820 n.18 (B.A.P. 9th Cir. 2009).

said, application of the factors is not a mathematical equation.  In the appropriate circumstance, "any one of the relevant factors may provide a sufficient basis for equitable remand."[37]  The discretion to remand under § 1452(b) is "an unusually broad grant of authority; it subsumes and reaches beyond all of the reasons for remand under nonbankruptcy removal statutes."[38]  Consistent with this broad authority, the decision to remand a matter under § 1452(b) is not reviewable on appeal.[39]

The defendants argue that remand is required as there is a lack of bankruptcy jurisdiction.  As the claims asserted in the removed action existed prepetition and are wholly dependent upon state law, they contend that they neither arise in, or under, the bankruptcy for purposes of establishing jurisdiction under 28 U.S.C. § 1334(b).  Similarly, they argue that because liability has been established and all that is left is the liquidation of damages, there is not even related to jurisdiction.  Alternatively, the defendants argue that equitable considerations require that the case be remanded to state court.

New Meritage opposes remand.  Much of its opposition is directed towards its inability to comply with the state court's orders to deposit cash or bond into escrow for the amounts owed to defendants for prior sales.  New Meritage also states that Gross is

---

[37] *Fed. Home Loan Bank of Chicago v. Banc of Am. Sec. LLC*, 448 B.R. 517, 525 (C.D. Cal. 2011).

[38] *Roman Catholic Bishop of San Diego*, 374 B.R. at 761 (citing *McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999)).

[39] 28 U.S.C. § 1452(b).

the subject of criminal investigations and has violated the automatic stay - neither of which appear relevant to the pending motions before the court. More relevant, however, it argues that removal, and ultimately the transfer of the adversary proceeding to Arizona, will benefit everyone because it will foster a global resolution between Barrett, New Meritage and Gross. Finally, it argues that core jurisdiction exists because it is necessary to liquidate the defendants' proof of claim based on the same claims and conduct.

In reviewing the equitable factors and the arguments presented, concerns regarding forum shopping predominate the analysis. The parties litigated this case in the Alaska Superior Court for five years prior to filing bankruptcy. They have completed a trial at which the jury found Barrett liable for compensatory and punitive damages. The only matter remaining is the determination of those damages, which Barrett and New Meritage have frustrated by their actions and inactions related to discovery. New Meritage now argues that its reorganization, as well as the separate bankruptcy of its principal Jack Barrett, will be facilitated by removal to the Arizona bankruptcy court. Yet, it is unclear why removal will accomplish anything that cannot otherwise be accomplished with remand of the State Court Action to the Superior Court.

New Meritage desperately wants to avoid payment of the escrow amounts imposed by the Superior Court. The filing of its bankruptcy accomplished that goal. Any collection of the escrow by the state court litigation is now stayed under the provisions of 11 U.S.C. § 362(a). The management of that stay, including how and when the case

12

would proceed in the Alaska Superior Court, remains under the control of the Arizona bankruptcy court.

New Meritage also raises possible challenges to the Superior Court's imposition of a constructive trust. Those questions concerning the enforceability of the constructive trust, however, already exist and will be addressed by the bankruptcy court. Remand does not alter the reality that the determination of damages is the only matter remaining for trial by the Superior Court.

New Meritage has failed to establish why the bankruptcy court's control of the stay is insufficient to bring about the advantages its seeks within its bankruptcy as well as the separate but intertwined bankruptcy of Barrett. This reinforces the court's conclusion that New Meritage simply wants to avoid having the Alaska Superior Court determine the amount of damages it owes to the defendants given that court's prior rulings. New Meritage's attempt to avoid the conclusion of its five (now six) year litigation in the Alaska Superior Court constitutes a classic instance of forum shopping.

Based on the record before it, the court finds that New Meritage's forum shopping alone is a sufficient reason to remand this case to the Alaska Superior Court. Yet, the remaining pertinent factors to be considered as part of the court's § 1452(b) analysis also weigh in favor of remand, though they generally reinforce the court's finding that removal of the State Court Action is an attempt to forum shop.

1.      <u>The effect or lack thereof on the efficient administration of the estate if the Court recommends remand or abstention</u>.

Liability has been established through a jury trial.  All that remains is the determination of damages.[40]  The amount of the compensatory damages appears to be essentially a mathematical equation based on the 25% interest owned by the original Meritage Companies (now AK Meritage) that resulted in Gross's 12.5% interest in North Ogden project, as found by the jury, and the prior sales made through New Meritage on which Gross was never paid.  Punitive damages were also awarded by the jury, however, and must be liquidated as well.  The Alaska Superior Court has repeatedly observed that determination of damages has been frustrated by Barrett's and New Meritage's refusal to provide adequate, responsive discovery.  The state court has dealt with this matter for years, and was prepared to commence trial when Barrett and New Meritage filed their bankruptcy cases.

Damages must be still be liquidated.  It is unclear how doing so in the State Court Action would adversely impact the administration of the estate.  As noted above, and as the recent sale of some of New Meritage's real property pursuant to the Arizona bankruptcy court's order establishes, the bankruptcy provides New Meritage the

---

[40] New Meritage's liability for damages within the State Court Action is unclear.  The jury verdict and instructions attached as Exhibits 1 and 2 to the Motion to Remand indicate that the existing damages for breach of contract, breach of fiduciary duty, fraud, and punitive damages are directed towards Barrett personally.  Similarly, the Alaska Superior Court held that Barrett was personally the constructive trustee of Gross's interest.  Adv. ECF No. 7-1, Ex. 10 at 152.  However, Gross has filed proofs of claim against New Meritage for damages including punitive damages.  Given the Alaska Superior Court's recognition of Gross's ultimate interest in the North Ogden project, the determination of damages will clearly affect New Meritage's bankruptcy estate.  This establishes related to jurisdiction under § 1334(b).

opportunity to continue its business while liquidating the damages previously awarded by the Alaska jury.  Accordingly, remand of the State Court Action will not impact the administration of New Meritage's bankruptcy.

This factor, standing by itself, is neutral as to remand.  However, the neutrality of this factor only lends additional significance to New Meritage's forum shopping.

2.    The extent to which state law issues predominate over bankruptcy issues.

The issues involved in the State Court Action are exclusively state law issues.  Those issues have largely been determined by the Alaska jury.  Rather, the remaining matters are simply the determination of the amount of the resulting damages, including punitive damages.  This factor weighs in favor of remand.

3.    The jurisdictional basis of the action, the degree of relatedness to the bankruptcy case, and the substance of any core proceeding.

Several of the factors that may be considered are interrelated in this instance: the presence of related proceedings commenced in state court or other non-bankruptcy proceedings; the jurisdictional basis, if any, other than § 1334; the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; and the substance rather than the form of an asserted core proceeding.[41]   In his related bankruptcy, Barrett seeks to remove another Alaska case involving him and another of his entities, Mystery Ranch, and the defendants.  The Alaska Superior Court has entered judgment in that case in favor of Mystery Ranch against Gross, and that judgment has long ago become final.  Mystery

---

[41] *Cedar Funding*, 419 B.R. at 820 n.8.

Ranch, a nondebtor, now seeks post-judgment collection relief in the case. New Meritage and Barrett hope to force an offset of the obligations owed to Mystery Ranch against the obligations New Meritage owes to Gross within its bankruptcy. New Meritage and Barrett candidly admitted as much at oral argument. Given the finality of that separate litigation, and lack of mutuality among the parties, the court views removal of that related proceeding as yet further indicia of forum shopping in an attempt to leverage separate litigation involving separate parties.

The parties also spend considerable time discussing the jurisdictional basis for the bankruptcy court's consideration of the removed State Court Action. This discussion centers around the defendants' filing of a proof of claim in the bankruptcy, the imposition of a constructive trust, and the administration of the escrow account. The court construes the imposition of the constructive trust and escrow accounts as incidents of the State Court Action. New Meritage removed the lawsuit, not those limited aspects of the case. Moreover, as previously discussed, regardless of remand the bankruptcy court has the ability to condition any relief from stay to manage the escrow account and adjudicate the enforceability of the constructive trust in light of the bankruptcy. Rather, it is the determination of the damages, and specifically the punitive damage award, that remains for determination in the State Court Action.[42] While the liquidation of those damages will obviously impact the estate, there is nothing to suggest that there is such a relatedness to

---

[42] Reply, Adv. ECF No. 28 at ECF p. 11:20-21 ("The only thing that matters to the Defendants is that the Superior Court complete the damages phase and enter judgment.").

16

the main case that the determination of damages should be heard by the Arizona bankruptcy court rather than the forum that conducted the jury trial and has spent the past five to six years administering the State Court Action.

As to the jurisdictional arguments, the "filing of a proof of claim in the debtor's bankruptcy case does not turn the removed state law action into a core proceeding."[43] The Ninth Circuit considered this question in depth in *Benedor Corp. v. Conejo Enterprises, Inc. (In re Conejo Enterprises, Inc.),*[44] noting that in a prior opinion "we held that Benedor's filing of the claim in the bankruptcy rendered the state law action a core proceeding.  In doing so, we were in error."[45]  The Ninth Circuit explained: "While there can be no serious dispute that claims filed in bankruptcy are within the bankruptcy court's core jurisdiction, the filing of a claim does not consolidate it with the pending state law case (into the claim) even though they are based on the same transaction. Both continue to exist, and must be considered, separately."[46]

In short, there is a difference between removal of a prepetition state court action involving only state court claims and an objection to a proof of claim within a

---

[43] *Cabana v. Rodriguez (In re People's Choice Home Loan),* 2007 WL 9637067, at *4 (Bankr. C.D. Cal. Oct. 29, 2007).

[44] 96 F.3d 346 (9th Cir. 1996).

[45] *Id.* at 349.

[46] *Id.*

bankruptcy.[47]  A claim objection can only arise in a bankruptcy case and bankruptcy jurisdiction under § 1334(b) is well established.  But the matter before the court is only the State Court Action, not an objection to the proof of claim, or even a challenge under the Bankruptcy Code to the constructive trust or escrow requirement.  The State Court Action, by itself, is not core under 28 U.S.C. § 157(b)(2)(B).  Nor does it arise in, or under, the bankruptcy.  Liquidation of Gross's claims, however, is clearly related to New Meritage's bankruptcy.  Accordingly, there is bankruptcy jurisdiction under 28 U.S.C. § 1334(b), but that is the sole basis for jurisdiction.  Moreover, there is no substance for core jurisdiction of the State Court Action.  Accordingly, each of these factors are neutral or support remand.[48]

    4.   <u>Comity</u>.

Removal of the State Court Action invokes fundamental principles of comity which strongly support remand in this instance.  "The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction."[49]  It is a prudential doctrine, rather than a hard and fast rule, borne out of "a proper respect for

---

[47] Later, the trustee rejected the agreement with the creditor.  This lead to the trustee objecting to the creditor's proof of claim for damages resulting from the rejection.  The objection challenged the enforceability of the underlying agreement.  On appeal, the Ninth Circuit explained that the bankruptcy court did have core jurisdiction over the claim objection. *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.),* 204 F.3d 1276, 1279-80 (9th Cir. 2000).  The Ninth Circuit did not discuss jurisdiction under § 1334(b) in that decision.

[48] *See generally Mach. Zone, Inc. v. Peak Web LLC (In re Peak Web LLC)*, 559 B.R. 738, 743 (Bankr. D. Or. 2016) (state law claims remanded despite the claims constituting the largest potential debt against the debtor and debtor's claims constituted the largest potential asset).

[49] *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010).

state functions."[50]  Discussing the role comity must play in deciding whether or not a bankruptcy court should retain jurisdiction of a state court dispute, the Bankruptcy Appellate Panel for the Ninth Circuit has observed that "if comity is anything it is the concept that, all else being equal, state law issues ought to be decided by state courts."[51]

New Meritage asks that a federal court take control of an Alaskan case, involving only issues of Alaska law, that has been pending for years and has already resulted in an Alaska jury verdict.  The only remaining action to be done is the determination of damages, which the court has found New Meritage has actively frustrated.  It is unclear what, if anything, a bankruptcy court could accomplish in the State Court Action were it to be removed.  As detailed above, New Meritage's stated concerns regarding the escrow agreement and constructive trust imposed by the Alaska Superior Court can already be addressed and managed within the bankruptcy apart from the determination of damages.  Thus, comity weighs heavily in favor of remand to allow the Alaska Superior Court to determine the damages to be awarded on the Alaska state law claims.

The court finds the remainder of the factors to be non-applicable or neutral to the question of remand.

---

[50] *Id*. (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 112 (1981)).

[51] *Linkway Inv. Co., Inc. v. Olsen (In re Casamont Inv'rs, Ltd.*), 196 B.R. 517, 525 (B.A.P. 9th Cir. 1996).

For the reasons detailed above, the court concludes that the facts and circumstances surrounding these matters require that the removed matters be remanded pursuant to 28 U.S.C. § 1452(b).

In light of the court's decision on remand, New Meritage's Transfer Motion is moot.[52]

Therefore,

**IT IS HEREBY ORDERED** that the Defendants' Notice of Motion and Motion to Remand the Adversary Proceeding in Whole or in Part Under [28] U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027(d) (Adv. ECF No. 7) is GRANTED.

**IT IS FURTHER ORDERED** that the state court action *Meritage Companies, LLC and Jack Barrett v. Robert "Bob" Gross and AK Meritage Companies, LLC*, Case No. 3AN-15-08320 CI, filed with the Alaska Superior Court is REMANDED pursuant to 28 U.S.C. § 1452(b).

//

---

[52] The parties both addressed which motion the court must address first: the motion to transfer or the motion to remand.  "[D]istrict courts have discretion over whether to hear a motion to transfer prior to a motion to remand." *Pacific Investment Management Co. LLC v. American International Group,* 2015 WL 3631833, at *4 (C.D. Cal. June 10, 2015).  Exercising this discretion, the court opts to join the numerous courts that have chosen to consider the motion to remand prior to the motion to transfer. *See id.*; *see also Kamana O'Kala, LLC v. Lite Solar, LLC,* 2017 WL 1100568, at **4-5 (D. Or. Feb. 13, 2017); *Enron,* 296 B.R. at 509.

**IT IS FINALLY ORDERED** that the Motion to Transfer Venue (Adv. ECF No. 4) is DENIED.

DATED: February 4, 2021.

BY THE COURT

 /s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  D. Bundy, Esq.
        D. L. Hawkins, Esq.
        A. Napolitano, Esq.
        N. Swift, Esq.
        C. Cacciola, Esq.
        ECF Participants via NEF
        Case Manager